Juleo, Inc., a New Jersey Corporation v. Commissioner.
Juleo, Inc. v. Commissioner
Docket No. 4910-69.
United States Tax Court
T.C. Memo 1971-68; 1971 Tax Ct. Memo LEXIS 265; 30 T.C.M. (CCH) 284; T.C.M. (RIA) 71068; April 12, 1971, Filed *265 Held: Property was not held primarily for sale to customers in the ordinary course of petitioner's trade or business within the meaning of Sec. 1221(1) after notice of condemnation of the property for state highway purposes. Ralph Mayo, 73 Paterson St., New Brunswick, N.J., for the petitioner. Thomas S. Carles, for the respondent. QUEALY
Memorandum Findings of Fact and Opinion QUEALY, Judge: The respondent determined a deficiency in the Federal income tax due from the petitioner Juleo, Inc. for petitioner's taxable year ended October 31, 1966 in the amount of $9,829.49. The only issue presented for decision is whether condemnation by the State of New Jersey of property held by the petitioner primarily for sale to customers in the ordinary course of business converts the character of the property so that the *266 property becomes a capital asset as defined by section 1221. [1]
Findings of Fact Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Juleo, Inc. (hereinafter referred to as "petitioner") is a domestic corporation duly organized and existing under the laws of the State of New Jersey. At the time of the filing of the petition herein and at all times material hereto, the principal place of 285 business and office of the petitioner was located in Somerville, New Jersey. The petitioner filed its corporate income tax return for the fiscal year ended October 31, 1966 with the district director of internal revenue at Newark, New Jersey. Petitioner was organized in 1954 for the purpose of real estate development, home building and sales. Petitioner and a sister corporation, C & C Home Builders, Inc., are owned by two brothers, Leo and Julian Chmil. Both of the corporations are engaged in the business of real estate development and home building. During the calendar year 1955, *267 petitioner acquired a 100 acre tract of land located in Bridgewater Township, State of New Jersey (hereinafter referred to as the "Township"). The purchase price of this tract was approximately $140,000. Of this amount, $10,032.62 is the prorated price of the 16.5 acres which were ultimately condemned by the State of New Jersey. The entire 100 acre tract was acquired and held for the purpose of development and sale, and shortly after its acquisition, the petitioner began the process of developing the tract. Subdivision maps were filed and engineering work was done. Preliminary approval for a subdivision was obtained from the Township on the entire 100 acre tract in 1956, and final approval for residential development of three sections, including a small part of the 16.5 acre portion ultimately condemned, was obtained in 1957. The process of obtaining preliminary approval from the Township served to increase the value of the 100 acre tract of real estate. The petitioner's action in obtaining preliminary approval from the Township resulted in the 100 acre tract becoming part of petitioner's inventory as a real estate dealer or property held by petitioner primarily for sale to customers *268 in the ordinary course of his trade or business. During the calendar year 1958, the petitioner learned that the State of New Jersey planned to condemn approximately 16 acres of the 100 acre tract for use in the construction of a highway, Route 287. In 1960, the highway was formalized, and in 1962, petitioner entered formal discussions with the state concerning condemnation of a 16.5 acre tract. In 1965, the commissioners on condemnation made a final offer of $50,000 for the 16.5 acre tract. The petitioner appealed this award, and judgment was entered by the Superior Court of the State of New Jersey wherein petitioner was awarded $97,650.63 for this 16.5 acre tract. The sale was consummated on January 7, 1966. The basis of petitioner's appeal from the initial award of $50,000 was based on the premise that the condemnation would damage potential commercial property as well as potential residential property. The ultimate gain to petitioner as a result of the condemnation was $70,950.30. This amount represented substantially all of the petitioner's income for the taxable year 1966 and was reported by the petitioner as a capital gain. Subsequent to learning that the State of New *269 Jersey planned to condemn approximately 16 acres of the 100 acre tract, petitioner did not proceed with any further development or exploitation of the 16 acre tract. However, during the years 1957 through 1968, the petitioner continued the development of the remainder of the 100 acre tract and engaged in sales activity with respect to such remainder during the course of which the petitioner advertised and sold residential lots. In addition, petitioner also sold two commercial plots of 5 acres each and leased 10 acres on the highway from the remainder of the 100 acre tract. Subsequent to the sale of the 16.5 acre tract through condemnation, the petitioner purchased additional similar property to continue operation. The petitioner did not solicit the State of New Jersey to condemn the 16.5 acre tract, and the condemnation was involuntary as to the petitioner. Ultimate Findings of Fact After the petitioner was notified by the state that 16.5 acres of the 100 acre tract held by the petitioner were subject to condemnation, the petitioner was not holding that portion of the tract "primarily for sale to customers in the ordinary course of his trade or business" within the meaning *270 of section 1221(1). The 16.5 acre portion of the tract was a capital asset at the time of its sale to the state. Opinion In this case, petitioner was a real estate dealer who engaged in both residential and commercial land transactions. Petitioner purchased a 100 acre tract of real estate and immediately took steps to render the property salable. As a result of initiating such steps, the property became part of 286 petitioner's real estate inventory or property held by the petitioner primarily for the sale to customers in the ordinary course of his trade or business, and the property was so held at the time of the receipt of the notice of condemnation. Section 1221(1) [2] excludes inventory or property held for the sale to customers in the ordinary course of trade or business from the definition of a capital asset and thus from the benefits of capital gain treatment. The only issue presented for decision is whether the notice of condemnation by the State of New Jersey as to a 16.5 acre portion of the 100 acre tract removed this 16.5 acre portion from inventory or from classification as property held by the petitioner primarily for the sale to customers in the ordinary course *271 of his trade or business so as to enable the petitioner to qualify for capital gain treatment on the gain it derived from the condemnation sale. In , affd. (C.A. 10, 1968), this Court found that prior to the receipt of a condemnation notice, the property in question was held by the taxpayer therein primarily for sale to customers in the ordinary course of business but that after the receipt of the condemnation notice the property ceased to be property held primarily for sale to customers in the ordinary course of trade or business. We regard the holding of the Tri-S Corp. case as determinative of the issue now *272 before us. After the condemnation notice in this case, petitioner no longer held the 16.5 acre tract primarily for sale to customers in the ordinary course of its trade or business, and the property sold to the State of New Jersey was a capital asset at the time of its sale. Decision will be entered under Rule 50. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. SEC. 1221. CAPITAL ASSET DEFINED. For purposes of this subtitle, the term "capital asset" means property held by the taxpayer (whether or not connected with his trade or business), but does not include - (1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;↩